STATE of Wisconsin, Plaintiff-Respondent,

v.

William A. SILVA, Defendant-Appellant.†

Court of Appeals

*Nos. 02–1502–CR, 02–2050–CR. Submitted on briefs March 4, 2003.—Decided August 5, 2003.*

2003 WI App 191

(Also reported in 670 N.W.2d 385.)

† Petition to review denied 12-16-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martin E. Kohler* and *Brian Kinstler* of *Kohler & Hart, LLP*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, Attorney General, and *Gregory M. Weber*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. William A. Silva appeals the judgment entered following a bench trial, convicting him of one count of first-degree sexual assault, contrary to Wis. Stat. § 948.02(1) (1999–2000), and from the

order denying his postconviction motion.[1] He argues that his attorney was ineffective for: (1) not knowing that, pursuant to the holding of *State v. Wallerman*, 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996), *overruled by State v. Veach*, 2002 WI 110, 255 Wis. 2d 390, 648 N.W.2d 447, a stipulation could have been proffered that might have prevented the introduction of damaging "other acts" evidence; (2) failing to object to the admission of "other acts" evidence; and (3) abdicating his role in the adversarial process by conceding Silva's guilt in closing argument. Further, he contends that: (1) his jury waiver was invalid because he waived his right to a jury trial based on the mistaken advice of his attorney; (2) the trial court erred in admitting the "other acts" evidence and in admitting other irrelevant and prejudicial testimony regarding Silva's guilty appearance; and (3) he is entitled to resentencing because the trial court failed to inform him of two critical advisories under the truth-in-sentencing law, *see* WIS. STAT. § 973.01(8).

¶ 2. After reviewing the record, we are satisfied Silva's attorney's performance was deficient as a result of his ignorance of the *Wallerman* holding, but he was not prejudiced by this conduct. Further, we adopt the postconviction court's findings, as they are not clearly erroneous, that Silva decided freely and voluntarily to waive his right to a jury before the trial court ruled on the "other acts" evidence, and that emphasizing the *de minimis* nature of the offense in closing argument was an appropriate strategy. As to the evidentiary issues, we conclude that the trial court properly exercised its discretion in admitting the "other acts" evidence and the other evidence concerning Silva's guilty appearance.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

Finally, we are satisfied that the postconviction court cured the trial court's sentencing omissions in failing to personally advise Silva of the explanations required by WIS. STAT. § 973.01. Thus, we affirm.

## I. BACKGROUND.

¶ 3.   In June 2000, Silva was charged with one count of first-degree sexual assault of a child. The charge arose out of an accusation by his six-year-old niece, M.S., that Silva got into bed with her, put his hand down her pants, and rubbed her buttocks. The criminal complaint states that Silva also rubbed his "winkie" against her legs. Silva waived his preliminary hearing. Later, the State filed a motion *in limine* seeking to introduce WIS. STAT. § 904.04(2) evidence of three prior sexual assaults.

¶ 4.   After the State filed its motion *in limine,* but before the trial court ruled on the "other acts" evidence, Silva waived his right to a jury trial on the advice of his trial attorney. At the *Machner* hearing, the trial attorney admitted that when he advised Silva to waive his jury, he was unaware of the possibility of entering a *Wallerman* stipulation, which might have prevented the State from admitting the "other acts" evidence to show intent.[2]

¶ 5.   Just prior to the commencement of the trial, over Silva's attorney's objection, the trial court ruled that the "other acts" evidence was admissible. After the trial court granted the State's motion, the State and Silva's attorney agreed to a stipulation permitting the

_____

[2] During a *Machner* hearing, trial counsel testifies and the postconviction court determines whether trial counsel's actions were ineffective. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

records of the prior offenses to be entered into evidence in lieu of the past victims' live testimony.

¶ 6. At trial, the State called the victim, M.S., to the stand, as well as several other witnesses. All were cross-examined by Silva's attorney. One of those witnesses was Silva's brother, the father of the victim, who testified that when he confronted Silva with his daughter's accusation, Silva "turned dirty yellow to me and nervous." No objection was made to this testimony. The brother also testified, over Silva's objection, that before he learned of the alleged assault, Silva demonstrated his guilt when he sat down during a prayer service, while everyone else remained standing, when discussing the theme "sinning again." No witnesses were called by the defense.

¶ 7. At the conclusion of the trial, Silva's attorney gave a brief closing argument. During the closing argument, Silva's attorney admitted that the victim was "being truthful, to some extent," and that Silva had "technically" committed the crime. Silva was found guilty. At the urging of the State, the trial court proclaimed that it had not relied on the WIS. STAT. § 904.04(2) "other acts" evidence in reaching its verdict. Silva was sentenced to twenty-five years of confinement and twenty years of extended supervision; however, the trial court failed to give the advisories mandated by the new truth-in-sentencing law.[3]

---

[3] WISCONSIN STAT. § 973.01 provides, in relevant part:

**Bifurcated sentence of imprisonment and extended supervision.**

. . . .

**(8)** EXPLANATION OF SENTENCE. (a) When a court imposes a bifurcated sentence under this section, *it shall explain, orally and in writing,* all of the following to the person being sentenced:

¶ 8. Silva filed a postconviction motion and, as noted, the trial court held a *Machner* hearing. The postconviction court determined that Silva decided to waive his right to a jury before the State filed its motion seeking the admission of "other acts" evidence, even though the State's motion was filed on August 2, 2000, and Silva did not actually sign the jury waiver until August 23, 2000. The postconviction court also determined that while his attorney's performance was deficient for his lack of knowledge of the *Wallerman* holding, Silva suffered no prejudice since the trial court found him guilty without considering the "other acts" evidence. Additionally, the postconviction court found that Silva's attorney did object to the admission of the "other acts" evidence and that his attorney's closing argument, concentrating on the *de minimis* nature of the offense, constituted an appropriate strategy. Finally,

---

1. The total length of the bifurcated sentence.

2. The amount of time the person will serve in prison under the term of confinement in prison portion of the sentence.

3. The amount of time the person will spend on extended supervision, assuming that the person does not commit any act that results in the extension of the term of confinement in prison under s. 302.113(3).

4. That the amount of time the person must actually serve in prison may be extended as provided under s. 302.113(3) and that because of extensions under s. 302.113(3) the person could serve the entire bifurcated sentence in prison.

5. That the person will be subject to certain conditions while on release to extended supervision, and that violation of any of those conditions may result in the person being returned to prison, as provided under s. 302.113(9).

(Emphasis added.)

the postconviction court provided Silva with the missing truth-in-sentencing mandates.

## II. Analysis.

*A. Silva's attorney was deficient, but Silva was not prejudiced as a result.*

¶ 9.   Silva argues that his attorney was ineffective for three reasons. First, he submits that his attorney was unaware of the holding in *Wallerman* and, thus, failed to secure a stipulation preventing the "other acts" evidence from being admitted. Next, Silva claims his attorney was ineffective for failing to object to the "other acts" evidence. Finally, he submits that his attorney's closing argument, in which he stated that the victim was "being truthful, to some extent," and that Silva was "technically" in violation of the criminal statute prohibiting the sexual assault of a child, amounted to a concession of guilt and, consequently, his counsel "abdicat[ed] his role in the adversarial process." He argues that, as a result, his attorney's conduct was both deficient and prejudicial, and his jury waiver was invalid. We disagree.

¶ 10.   In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant was prejudiced as a result of this deficient conduct. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). To prove deficient performance, the defendant must identify specific acts or omissions of counsel that fall "outside the wide range of professionally com-

petent assistance." *See Strickland*, 466 U.S. at 690. To show prejudice, the defendant must demonstrate that the errors were so serious that the result of the proceeding was unreliable. *Id.* at 687. If the defendant fails on either prong—deficient performance or prejudice—the ineffective assistance of counsel claim fails. *Id.* at 697. We "strongly presume[]" counsel has rendered adequate assistance. *Id.* at 690.

¶ 11.   We have reviewed Silva's claim concerning his attorney's ignorance of the possibility of a *Wallerman* stipulation in the context of an ineffective assistance of counsel claim and we conclude that his attorney's lack of knowledge of the *Wallerman* holding constituted deficient performance. However, we are obligated to review ineffective assistance of counsel claims based on the law in place at the time of the appeal, and the *Wallerman* holding has been overturned; thus, we are compelled to conclude that Silva suffered no prejudice. *See Lockhart v. Fretwell*, 506 U.S. 364, 372–73 (1993).

¶ 12.   In *Wallerman*, this court set out a procedure that, when utilized by the defendant, could foreclose the State from introducing "other acts" evidence. According to *Wallerman*, if the defendant concedes the element of the charged offense that the "other acts" evidence was directed at proving, the State might be foreclosed from introducing the "other acts" evidence. *See* WIS. STAT. § 904.04(2). This holding, that a stipulation could be proffered and accordingly eliminate the reasons for the admission of the "other acts" evidence, has been overruled in part by *State v. Veach*, 2002 WI 110, 255 Wis. 2d 390, 648 N.W.2d 447. That case held that the State is not obligated to accept *Wallerman* stipulations:   "While we do not hold that *Wallerman* stipulations are invalid per se, we do hold that, with the

exception of stipulations to a defendant's status, the state and the court are not obligated to accept stipulations to elements of a crime . . . ." *Veach*, 255 Wis. 2d 390, ¶ 118. Additionally, it concluded:

> [A] *Wallerman* stipulation in a child sexual assault case is directly contrary to the greater latitude rule for the admission of other acts evidence in child sexual assault cases. The purpose of a *Wallerman* stipulation in this case–involving an allegation of child sexual assault–is to *preclude* the admission of other acts evidence. The purpose of the greater latitude rule in cases involving allegations of child sexual assault is to *"permit a more liberal admission* of other crimes evidence."

*Veach*, 255 Wis. 2d 390, ¶ 122 (quoting *State v. Davidson*, 2000 WI 91, ¶ 44, 236 Wis. 2d 537, 613 N.W.2d 606 (emphasis added by *Veach*) (citations omitted)). Here, what allegedly would have been stipulated to, had trial counsel been aware of *Wallerman*, was the occurrence of three separate prior instances of sexual assault. This evidence is relevant to the motive element of the crime. As *Veach* discusses, and as made clear by *Davidson*, 236 Wis. 2d 537, ¶ 65, and *State v. Hammer*, 2000 WI 92, ¶ 25, 236 Wis. 2d 686, 613 N.W.2d 629, the State must prove every element of the crime, even those elements that are undisputed. Thus, as the State is not obligated to accept *Wallerman* stipulations, and as the "other acts" evidence is relevant to establishing an element of the crime, it is unlikely that the State would consent to a defendant's offer to stipulate to an element of the charged crime if the introduction of that evidence would be prohibited as a result. Accordingly, the failure to offer a *Wallerman* stipulation is not deficient performance under *Veach. See Veach*, 225 Wis. 2d 390, ¶ 136 (stating "[w]e . . . overrule *Wallerman* and *DeKeyser* to the extent that those cases state or imply that the state

or the court must accept a *Wallerman* stipulation, or that failure of trial counsel to offer a stipulation is deficient performance regardless whether the state or the court would have accepted the stipulation."). Moreover, as noted, the trial court found that Silva decided to waive his right to a jury trial *before* the State sought to introduce the "other acts" evidence. Therefore, Silva cannot successfully claim his attorney's performance in not knowing about *Wallerman* was ineffective.

¶ 13.   Next, our review of the record belies Silva's claim that his attorney failed to object to the "other acts" evidence regarding the complaints that he previously sexually molested three other young girls. Silva is wrong; his attorney did object, although he filed no brief in opposition to that filed by the State.

> [DEFENSE COUNSEL]:   I – I didn't file an objection, Your Honor, because I didn't think it was necessary.
>
> It's the Defendant's, ah, position that, ah, the motion should be, ah, denied. I don't – I think that, ah, to allow evidence of, ah, events that may have occurred in 1991 and 1994 are so far removed from the present that it would – doesn't outweigh the prejudice to the Defendant. Um, to recall witnesses to recant what allegedly happened in 1991 and 1994 would be extremely prejudicial to my client, and if, ah, and when the Court finds this Defendant guilty, if that happens, the Court then could examine anything that transpired as far as this Defendant is concerned on prior matters, ah, for the purposes of sentencing. And to call witnesses that were of tender age in 1991 and 1994 and have them testify at this time, ah, I believe would be totally prejudicial and it should not be allowed.

Thus, Silva is not entitled to relief on this ground.

■

¶ 14. Finally, we address Silva's last ineffective assistance of counsel claim, which alleges that his attorney's concession of Silva's guilt entitles him to a new trial. Again, we disagree.

¶ 15. Silva argues that his attorney's closing argument, in which he commented favorably on the victim's credibility and conceded that Silva was "technically" guilty of the charged offense, was improper per the holding in *State v. Gordon*, 2002 WI App 53, 250 Wis. 2d 702, 641 N.W.2d 183,[4] and resulted in his

---

[4] Since the filing of this appeal, *Gordon* has been reversed by *State v. Gordon*, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765 [hereinafter *Gordon II*]. The Dissent inexplicably contends that the reversal of *Gordon* "all the more clearly established why we must reverse here[,]" despite the fact that the reversal supports the Majority's opinion. The Dissent relies on the supreme court's fact-specific conclusions and observations in *Gordon II*, instead of considering the essence of the reasoning behind its reversal. That reasoning more clearly aligns itself with the Majority's conclusion that upon consideration of all of the circumstances present here, defense counsel's closing argument falls short of the "functional equivalent" of a guilty plea in the instant case. The Dissent contends that the supreme court's reversal is "inextricably connected to two critical circumstances[,]" i.e., that Gordon's trial counsel conceded guilt on one of three counts, yet zealously advocated acquittal on the other two, and the defendant already admitted the conduct that constituted the conceded count, and accordingly, since neither of the two exist here, we should reverse. However, the supreme court also noted that an attorney's admission of the guilt of a client is not tantamount to a guilty plea:

> The court of appeals held that the defense attorney's closing argument concession on the disorderly conduct while armed count was the functional equivalent of a guilty plea, improper if done without Gordon's consent, and conclusively presumed to be prejudicial. We disagree. A guilty plea waives trial, cross-examination of

attorney "abdicating his role in the adversarial process." *See United States v. Cronic*, 466 U.S. 648, 656–57 (1984) (if the trial process "loses its character as a confrontation between adversaries, the constitutional guarantee is violated."). Here, the closing argument is stated in its entirety:

> Your Honor, it's very difficult to cross-examine a six-year-old child. I – I also believe that the child was being truthful, to some extent.
>
> Um, I'm concerned about the fact that, ah, when she was asked questions about time by the District Attorney – ah – this is after she had testified that the incident, ah, lasted approximately one minute – whether we can give credibility to that statement, whether it was longer or not. The facts still remains is that, um, she said it took one minute.

witnesses, the right to testify and call witnesses in one's own defense, and the right to a unanimous jury verdict of guilt beyond a reasonable doubt. The concession in this case had none of these effects . . . .

*Gordon II*, 262 Wis. 2d 380, ¶ 24. It went on to note that in light of Gordon's own testimony admitting the conduct that constituted the conceded count, it was "not deficient performance for Gordon's attorney to concede the overwhelming weight of the evidence . . . ." *Id.*, ¶ 26.

In the instant case, Silva similarly had a trial, albeit without a jury, cross-examined witnesses, and had the opportunity to call witnesses and the right to testify if he chose to do so. Accordingly, after considering the circumstances of this case, i.e., the cross-examination of M.S., trial counsel's strategy as deemed appropriate by the trial court, the strength of the State's case, and the testimony regarding Silva's failure to deny the accusation, we conclude that Silva's attorney rendered adequate assistance and that this determination is supported by the reversal of *Gordon*.

First[-]degree sexual assault is a very, very serious – very serious crime. I would assume that the State's case is based upon the fact that this young girl was 13 – under 13 years of age. I tried to have the Court find out from the witnesses what the extent of the sexual contact was. The extent of the sexual contact was the fact that he had rubbed her buttock, not her vaginal area, and, ah, that, ah, he had his clothes on. Ah, at no time was he exposed. Um, that evidently is substantiated by, ah, our Exhibit No. 1, which the police officer recorded by stating that he was clothed.

Um, I suppose technically this is a case of first [-]degree sexual assault. I don't like to say that, however, I believe it's of such insignificant proportions as to what we generally would call a first[-]degree sexual assault, and that is that, um, I don't believe the State has proved beyond a reasonable doubt, ah, the fact that, ah, the elements have been proved.

That's the only comment I have to make at this time.

¶ 16. At the *Machner* hearing, Silva's attorney testified that his closing argument strategy was to point out to the trial court that the case had been overcharged as a first-degree sexual assault. He agreed that he characterized the touching in question as just "minor touching."[5] The postconviction court determined that Silva's attorney's closing strategy was appropriate. We adopt the postconviction court's finding in this regard as it is not clearly erroneous. *State v. DeKeyser*, 221 Wis.

---

[5] The postconviction court ordered a *Machner* hearing on other issues and did not grant the motion to hold a *Machner* hearing based upon Silva's attorney's closing argument. However, Silva's postconviction motion and the postconviction court explored this issue. Thus, we do not remand for an additional *Machner* hearing.

2d 435, 442, 585 N.W.2d 668 (Ct. App. 1998) (stating we will uphold the postconviction court's factual findings "concerning circumstances of the case and counsel's conduct and strategy" unless they are clearly erroneous), *overruled on other grounds by State v. Veach*, 2002 WI 110, 255 Wis. 2d 390, 648 N.W.2d 447.

¶ 17. Finding the trial attorney's handling of the little girl on cross-examination appropriate as a matter of strategy, the postconviction court remarked:

> I find in [the trial lawyer]'s strategizing about the defense he was concerned and I find the concern appropriate [–] that attacking the credibility of a six-year[-]old child is a difficult and delicate feat that one has to on one hand be cautious and treat the child with kid gloves and yet has to be able to attack the understanding or comprehension of a child as to what happened or if it happened.

¶ 18. Silva's attorney engaged in selective cross-examination of M.S., from which he was able to establish that M.S.'s concept of time was suspect because the victim claimed to be assaulted in her sister's bed at a time of day contrary to her mother's testimony. Silva's attorney correctly observed in his closing argument that examining a six-year-old is a delicate task: "Your Honor, it's very difficult to cross-examine a six-year-old child." Accordingly, Silva's attorney elected to question the length of the attack, to highlight the confusion of the victim as to when it occurred, and to argue that the offense was "of such insignificant proportions as to what we generally would call a first[-]degree sexual assault," since Silva never exposed himself and only inappropriately touched his niece on the buttocks.

¶ 19. We are satisfied that, under the circumstances, Silva's allegations do not defeat the strong presumption that trial counsel rendered adequate as-

sistance. Silva's trial attorney did as well as most attorneys would have done. Stating that Silva was "technically guilty" had two beneficial effects: first, it telegraphed to the trial court that if any doubt existed in the trial court's mind, the minor nature of the act could act as a controlling factor in finding Silva not guilty; and second, the strategy emphasized the idea that the matter was overcharged, setting up an argument for leniency at sentencing. Thus, counsel did not abdicate his role in the adversarial process.

¶ 20. Moreover, given the strength of the State's case, the attorney's closing argument was also not beyond the realm of "reasonably effective representation," which is the test we must apply. *See State v. McMahon*, 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994). The six-year-old girl was a very articulate witness. She reported the attack to her mother as soon as she was able to get her mother's attention, which was the next day. Another significant consideration is the fact that the girl's father testified that when he confronted Silva, his half-brother, Silva not only displayed all the signs of guilt, but also *did not deny* the accusation. *See Caccitolo v. State*, 69 Wis. 2d 102, 110, 230 N.W.2d 139 (1975) (silence in the face of an accusation that most people would deny is an admission). Thus, Silva is not entitled to a new trial on this basis.

*B. Silva knowingly waived his right to a jury.*

¶ 21. Silva argues that he waived his right to a jury based upon the inaccurate advice of his attorney, who was unaware of the *Wallerman* holding, which would have foreclosed the State from introducing "other acts" evidence, when he urged him to waive his right to a jury. Silva's attorney testified at the *Machner* hearing

that he recommended a bench trial because he believed that a more vigorous cross-examination of the victim could be conducted in a bench trial and, accordingly, that the trial court could then better assess the credibility of the victim. Also, he was concerned that any of the jurors who had young children would identify with the victim.

■

¶ 22.    When examining whether a party should be relieved from a waiver of jury trial, this court reviews the trial court's decision to see if there has been an erroneous exercise of discretion. *See State v. Cloud*, 133 Wis. 2d 58, 63, 393 N.W.2d 123 (Ct. App. 1986). A trial court's discretion in deciding a motion to withdraw a jury waiver "is not unbridled and should be exercised liberally in favor of granting the defendant's right to a jury trial." *Id.* A jury waiver is valid if the person waived that right personally, knowingly, voluntarily and intentionally, and the record clearly indicates a willingness and intent to waive his or her right. *See* Wis. Stat. § 972.02(1); *State v. Grant*, 230 Wis. 2d 90, 95, 601 N.W.2d 8 (Ct. App. 1999). Thus, to be valid, "a jury trial waiver must be an intentional relinquishment or abandonment of a known right or privilege." *See State v. Anderson*, 2002 WI 7, ¶ 11, 249 Wis. 2d 586, 638 N.W.2d 301 (citations omitted). However, the trial court's finding that a party's jury waiver was proper should be accepted unless it is clearly erroneous. *See* Wis. Stat. § 805.17(2) and Wis. Stat. § 972.11(1).

¶ 23.    The postconviction court refused to relieve Silva from his jury waiver because it determined that Silva had decided to waive his right to a jury trial before the State filed its motion seeking to introduce "other acts" evidence.

¶ 24. When waiving a constitutional right, one must do so voluntarily, knowingly, and intelligently, with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The determination of whether there has been a valid waiver "must depend upon the unique circumstances" of each particular case. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942).

¶ 25. The postconviction court accepted Silva's attorney's averments that Silva elected to have a bench trial because of his concern that the jury would be sympathetic to M.S., and not because of his concern over the admission of evidence regarding his prior conduct. We must accept the postconviction court's findings as they are not clearly erroneous. *See DeKeyser*, 221 Wis. 2d at 442.

¶ 26. Although at the time when counsel advised Silva to waive his right to a jury Silva's counsel was unaware of the possibility that evidence regarding Silva's prior assaults could be kept from a jury by way of a *Wallerman* stipulation, Silva's waiver was based on his concern that the jury would be made up of mothers and fathers of young children, and not on the possibility that "other acts" evidence would be admitted. Silva waived his right because he thought that he would fare better in a bench trial. Indeed, Silva decided to do so even before the State sought to introduce the "other acts" evidence. Moreover, Silva had waived his right to a jury trial on at least one prior occasion, and was well aware of the significance of that waiver. Thus, we conclude that Silva's waiver of his right to a jury was knowingly and intelligently made, and that the post-

conviction court properly exercised its discretion when it failed to relieve Silva of his waiver.

C. *The trial court properly exercised its discretion in admitting the "other acts" evidence.*

■

¶ 27. The trial court ruled that the evidence of Silva's prior assaults was relevant, probative and could be admitted for the purposes of showing plan, scheme and/or motive. The court also found that the "probative value outweighs any prejudicial effect."[6] The State wished to introduce evidence regarding three prior incidents of sexual assault. Two of the three incidents were criminal convictions obtained in 1990 and 1994. In one case, the accuser was Silva's thirteen-year-old niece; in the other, the accuser was his girlfriend's thirteen-year-old daughter. The third incident, for which no charges were filed, involved Silva's daughter, who claimed that Silva fondled her twice when she was approximately nine years old. Silva now claims that his attorney's objection to the evidence amounted to no objection at all because he was not specific in his statements opposing the admission of the evidence and did not file a brief in opposition to the State's, thereby almost guaranteeing the admission of the "other acts"

---

[6] The trial court applied an improper standard. WISCONSIN STAT. § 904.03 provides:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

evidence. The postconviction court found that Silva's attorney sufficiently objected to the admission of the evidence.

■

¶ 28. We are satisfied, after applying the three-part test set forth in *State v. Sullivan*, 216 Wis. 2d 768, 771–73, 576 N.W.2d 30 (1998), that the trial court properly admitted the evidence regarding the prior assaults. When considering the admissibility of "other acts" evidence, the trial court should begin with the *Sullivan* analysis: (1) "Is the other acts evidence offered for an acceptable purpose under [Wis. Stat. § ] 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?" *Id.* at 772. (2) "Is the other acts evidence relevant, considering the two facets of relevance set forth in [Wis. Stat. § ] 904.01?" *Id.* (3) "Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence?" *Id.* at 772–73. Here, the answer to the first two questions is "yes"; the answer to the third question is "no." The evidence was properly offered to show motive, intent, and an absence of mistake. The evidence met the test for relevancy found in Wis. Stat. § 904.01.[7] Finally, the probative value of the evidence is not substantially outweighed by

---

[7] Wisconsin Stat. § 904.01 provides:

**Definition of "relevant evidence."** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

the danger of unfair prejudice or confusion of the issues. Thus, the trial court properly admitted the "other acts" evidence.

*D. The evidence of Silva's demeanor at a prayer service is admissible.*

¶ 29. Finally, Silva claims that the trial court erred in: (1) permitting testimony from his brother that Silva "turned dirty yellow to me and nervous" when confronted with his niece's accusation; and (2) admitting evidence of his demeanor at a prayer service. He argues the evidence was irrelevant and prejudicial. We note that no objection was made to the first piece of evidence and, thus, it is waived. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). Regarding the second piece of evidence, Silva's brother testified that on the day of the assault Silva attended a service that discussed the act of "sinning again." Silva's brother stated that Silva sat down during the discussion while everyone else remained standing. This behavior is consistent with the conduct of a person who has recently committed a crime and is admissible as such. *See Paulson v. State*, 118 Wis. 89, 106, 94 N.W. 771 (1903) ("Conduct of a suspected person after the crime is a legitimate subject for consideration, as bearing upon the probability of his guilt . . . ."). Thus, the trial court correctly permitted the witness to testify to his observations of Silva's guilt on the day of the crime.

¶ 30. For the reasons stated, the judgment and order are affirmed.

*By the Court.*—Judgment and order affirmed.

¶ 31. FINE, J. (*concurring*). I join fully in the Majority opinion, but write briefly to respond to the

Dissent's contention that William A. Silva should have, and his victim should have to endure, a new trial.

¶ 32. The Dissent complains that Silva's trial lawyer conceded too much in his closing argument to the trial court in this nonjury, bench trial. The Dissent also complains that Silva's lawyer gave no opening statement and called no witnesses. I address these matters in turn.

¶ 33. The State also did not give an opening statement. It is common for lawyers to dispense with opening statements in bench trials. Thus, the mutual eschewal of opening statements in a trial to the court sitting without a jury by both the State and the defense is hardly beyond the realm of "reasonably effective representation," which, as the Majority notes, is the standard we must apply. *See State v. McMahon*, 186 Wis. 2d 68, 80, 519 N.W.2d 621, 626 (Ct. App. 1994).

¶ 34. It is also true that Silva's lawyer did not call any witnesses. The Dissent does not tell us, however, *how* this was ineffective legal representation: the Dissent neither points to what witnesses *should* have been called, nor tells us how this prejudiced Silva. *See State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349–350 (Ct. App. 1994) (defendant who alleges that his lawyer was ineffective because the lawyer did not do something, must show with specificity what the lawyer should have done and how that would have either changed things or, at the very least, how that made the result of the trial either unreliable or fundamentally unfair).

¶ 35. The Dissent complains that Silva's trial lawyer gave a perfunctory closing argument, which conceded technical guilt. He did more, however. I, as does the Majority opinion, set out the trial lawyer's closing argument in full:

Your Honor, it's very difficult to cross-examine a six-year-old child. I — I also believe that the child was being truthful, to some extent.

Um, I'm concerned about the fact that, ah, when she was asked questions about time by the District Attorney — ah — this is after she had testified that the incident, ah, lasted approximately one minute — whether we can give credibility to that statement, whether it was longer or not. The fact still remains is that, um, she said it took one minute.

First[-]degree sexual assault is a very, very serious — very serious crime. I would assume that the State's case is based upon the fact that this young girl was 13 — under 13 years of age. I tried to have the Court find out from the witnesses what the extent of the sexual contact was. The extent of the sexual contact was the fact that he had rubbed her buttock, not her vaginal area, and, ah, that, ah, he had his clothes on. Ah, at no time was he exposed. Um, that evidently is substantiated by, ah, our Exhibit No. 1, which the police officer recorded by stating that he was clothed.

Um, I suppose technically this is a case of first [-]degree sexual assault. I don't like to say that, however, I believe it's of such insignificant proportions as to what we generally would call first[-]degree sexual assault, and that is that, um, I don't believe the State has proved beyond a reasonable doubt, ah, the fact that, ah, the elements have been proved.

¶ 36. The postconviction court found that the evidence was such "that if [the closing argument] was a deficiency it did not contribute unfairly or inappropriately to the conviction [in] that [the closing argument] was not a material factor in the [trial] Court's decision" finding Silva guilty beyond a reasonable doubt. Of

course. The trial court sat through the testimony; it, unlike a jury, did not need to have the evidence masticated and marshaled.

¶ 37. Moreover, as the Majority opinion points out:

> given the strength of the State's case, the attorney's closing argument was also not beyond the realm of 'reasonably effective representation,' which is the test we must apply. The six-year-old girl was a very articulate witness. She reported the attack to her mother as soon as she was able to get her mother's attention, which was the next day. Another significant consideration is the fact that the girl's father testified that when he confronted Silva, his half-brother, Silva not only displayed all the signs of guilt, but also *did not deny* the accusation.

Majority op. at ¶ 20. (Emphasis in original, citations omitted.) In light of this, for the Dissent to suggest that Silva's trial lawyer should have flatly denied everything, which is the essence of what the Dissent is saying, borders on advocating emulation of the tactic that will forever be associated with the former Iraqi Minister of Information, Mohammed Saeed al-Sahaf.[1]

¶ 38. Had Silva's trial lawyer cannonaded his closing argument with explosions of denial, as the Dissent seems to suggest, I bet Silva would be arguing on appeal that *such a strategy* was "ineffective." Indeed, when a finding of guilt by a court sitting as the fact-finder in a bench trial is certain, as it was here, a strategy of candid amelioration of the bad facts is powerful advocacy; why should a lawyer be believed when he or she argues mitigation on sentencing when the lawyer was just,

---

[1] Examples of absurd statements made by Mohammed Saeed al-Sahaf can be found at http://64.39.15.171 (last accessed July 24, 2003), and, most likely, a cursory search of the internet.

perhaps moments earlier, denying vigorously the irre-futable? Yet, this is the suicidal "advocacy" the Dissent commends. I respectfully disagree.

¶ 39. SCHUDSON, J. (*concurring/dissenting*). I concur with the majority in many respects. On one issue, however—whether Silva was denied his right to a jury trial—I depart from part of the majority's analysis; and on another—whether defense counsel's closing ar-gument constituted ineffective assistance—I disagree with the majority and conclude that a new trial is required.

## A. Jury Trial

¶ 40. The majority correctly concedes that counsel's performance was deficient by virtue of his ignorance of *Wallerman*. Had Silva waived a jury trial based on counsel's erroneous advice, grounded in igno-rance of *Wallerman*, then his jury waiver would have been invalid and his right to a jury trial would have to be restored. No further analysis would be needed. Prejudice would be clear because, under such circum-stances, it is not to be measured by the reasonable probability of a different verdict, but rather, by the reasonable probability of a different *result of the jury-waiver proceeding. See State v. Smith*, 207 Wis. 2d 258, ¶ 276, 558 N.W.2d 379 (1997) ("*The Strickland test is not an outcome-determinative test.* In decisions follow-ing *Strickland*, the Supreme Court has reaffirmed that the touchstone of the prejudice component is 'whether counsel's deficient performance renders *the result of the* trial unreliable or the *proceeding fundamentally un-fair.*' " (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (emphasis added))).

¶ 41. In *Smith*, the supreme court elaborated that "[i]n certain instances, prejudice is presumed once

933

deficient performance has been proven," *id.* at 278, and recounted various circumstances in which that is so, *id.* at 278–79. A review of the supreme court's eight examples reveals several proceedings that certainly would be deemed far more consequential than a jury-waiver hearing. *See id.*; *see also State v. Stallings*, 658 N.W.2d 106, 112 (Iowa 2003) (defense counsel's failure to ensure defendant's jury waiver was valid constituted a structural defect; thus, prejudice was presumed for purposes of establishing ineffective assistance of counsel).

¶ 42.  Here, to the extent that it focuses broadly on the reversal of *Wallerman* and the likely outcome of the trial, rather than narrowly on the result of the jury waiver proceeding, the majority misses the mark. Obviously, no one knows what the verdict would have been following a jury trial.[1] But the result of the jury-waiver proceeding is known. Thus, if Silva's jury waiver was uninformed, due to faulty advice based on ignorance of *Wallerman*, his right to a new trial, with a jury if he so desired, would be clear. And contrary to what the majority implies, no *subsequent* development, including

---

[1] Indeed, that very uncertainty all the more supports Silva's position. The supreme court explained:

> Part of the rationale behind presuming prejudice is the difficulty in measuring the harm caused by the error or the ineffective assistance. In [*State v.*] *Behnke*, for instance, [in which the supreme court "assumed prejudice" resulting from defense counsel's absence from the verdict return, and the resulting failure to poll the jury], we declined to indulge in calculation or speculation about the prejudice arising from the absence of counsel and the failure to poll the jury.

*State v. Smith*, 207 Wis. 2d 259, 280, 558 N.W.2d 379 (1997) (citations omitted).

the overruling of *Wallerman,* would alter the immutable fact that Silva was denied his right to a jury trial.[2]

¶ 43. Here, however, the majority correctly recognizes that the postconviction court's finding—that Silva decided to waive his right to a jury trial for reasons unrelated to counsel's ignorance of *Wallerman*—is not clearly erroneous. Indeed, that finding is substantially supported by defense counsel's testimony at the *Machner* hearing. For that reason alone, counsel's deficient performance was not prejudicial; it did not deny Silva his right to a jury trial.

## B. Closing Argument

¶ 44. Last year, with words that not only would seem to anticipate the instant case but also would refute the majority's rather desperate rationalization for defense counsel's closing argument, we declared:

> [A] defense attorney may not admit his client's guilt, which is contrary to his client's plea of not guilty, unless the defendant unequivocally understands and consents

---

[2] The majority's reliance on *Lockhart v. Fretwell,* 506 U.S. 364 (1993) is misplaced. *Lockhart* has not displaced *Strickland v. Washington,* 466 U.S. 668 (1984); it moves beyond the *Strickland* standards only in those circumstances where "[u]nreliability or unfairness does not result [because] the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right." *Lockhart,* 506 U.S. at 372. Here, however, we have the substantive right to a jury trial and the procedural right to a fully informed jury-waiver proceeding. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983) ("It is . . . recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to . . . waive a jury . . . ."); *see also State v. Gordon,* 2002 WI App 53, ¶ 27, 250 Wis. 2d 702, 725, 641 N.W.2d 183 (quoting *Jones,* 463 U.S. at 751.).

to the admission. *See Wiley v. Sowders*, 647 F.2d 642, 649 (6th Cir. 1981). Logically, we also hold that an attorney may not stipulate to facts which amount to the "functional equivalent" of a guilty plea without the defendant's consent. *See id.*; *see also People v. Carter*, 354 N.E.2d 482, 485 (Ill. App. Ct. 1976) (stating that counsel's closing argument that was tantamount to an admission of guilt cannot be overlooked as mere errors in judgment or trial strategy).

*State v. Gordon*, 2002 WI App 53, ¶ 27, 250 Wis. 2d 702, 641 N.W.2d 183, *rev'd*, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765.

¶ 45.  Until last month, our decision in *Gordon* should have controlled. (After all, in the instant case, defense counsel conceded, "I suppose technically this is a case of first-degree sexual assault." The rest of defense counsel's meager closing argument offered nothing to suggest otherwise.) But the supreme court reversed. *See id.*, 262 Wis. 2d 380, ¶ 5. In doing so, however, the supreme court all the more clearly established why we must reverse here.

¶ 46.  In *Gordon*, the supreme court held:

> The concession [of the defendant's guilt] by counsel was not the functional equivalent of a guilty plea under the circumstances of this case, where it came in closing argument, on one count in a multiple-count case, after full adversarial testing of the State's case and after the defendant had admitted on the witness stand the facts constituting the offense.

*Id.*, ¶ 5. The supreme court repeatedly emphasized that its conclusion was inextricably connected to two critical circumstances:  (1) counsel conceded guilt on only one count in a three-count trial, while "argu[ing] vigorously for acquittal on the more serious felony and misdemeanor counts," *id.*, ¶ 26; and (2) the defendant,

936

testifying at trial, admitted the conduct constituting the conceded count and, therefore, "Gordon's attorney did not concede anything that Gordon had not admitted as a factual matter on the witness stand," *id.*

¶ 47. Citing numerous cases, and noting their significantly distinguishing features, the supreme court further emphasized the importance of these two circumstances. *Id.*, ¶¶ 27–30. Any fair reading of the supreme court's decision leads to the inescapable conclusion that, but for either or both of those two circumstances, reversal is required.

¶ 48. Silva faced only one charge. At trial, Silva never testified; he never admitted the conduct constituting the crime. Nevertheless, in closing argument, defense counsel conceded Silva's guilt. The supreme court's decision in *Gordon* controls; Silva's conviction must be reversed.

## C. The Ironic Link

¶ 49. One last link joins these two issues. And given the majority's treatment of the jury-waiver issue, the irony is interesting. Counsel's closing argument, at best, could have called upon *a jury* to nullify—i.e., to find Silva not guilty despite the uncontroverted evidence of guilt. But, unquestionably, in a bench trial, counsel's concession that "technically this is a case of first-degree sexual assault" called for a guilty verdict.[3]

---

[3] And, we must keep in mind, counsel's argument left the trial court no option—no lesser-included offense was at issue. *See State v. Kramar*, 149 Wis. 2d 767, 792, 440 N.W.2d 317 (1989) (option of finding defendant guilty of lesser-included offense exists "*only* when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense").

¶ 50. The United States Supreme Court has declared:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." The *right to the* effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors— the kind of testing envisioned by the Sixth Amendment has occurred. *But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.*

*United States v. Cronic*, 466 U.S. 648, 656–57 (citations and footnotes omitted; emphasis added).

¶ 51. Here, where was the advocacy? Where was the "meaningful adversarial testing"? Defense counsel advised Silva to waive his right to a jury trial. He made no opening statement, called no witnesses, and conceded Silva's guilt in closing argument. While the first two factors are not determinative, they bring added understanding of the context in which the closing concession came. Under *Cronic* and *Gordon*, the closing argument is dispositive; conceding guilt, it was both deficient and prejudicial, thus requiring a new trial.

## D. Conclusion

¶ 52. The injustice in this case—for both Silva and the victim of his alleged assault—now prolonged by the need for a new trial, is significant. Still, Silva's right to a jury trial with the effective assistance of counsel

938

must be preserved and, therefore, while sharing the majority's view of many matters in this case, I must, in part, respectfully dissent.