UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 4, 2006
Decided November 17, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1295

| | |
|---|---|
| WILLIAM A. SILVA, <br>     *Petitioner-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin |
|   *v.* | No. 05-C-540 |
| CATHERINE J. FARREY, Warden, <br>     *Respondent-Appellee.* | William C. Griesbach, <br> *Judge.* |

**O R D E R**

William Silva appeals the district court's denial of his petition for a writ of habeas corpus challenging his Wisconsin conviction for the sexual assault of his six-year-old niece. In the district court, Silva argued that his trial counsel was ineffective for "conceding" Silva's guilt during closing argument. The district court found that Silva's counsel had not conceded his guilt, and accordingly denied the writ.

Silva was charged in 2000 with one count of first degree sexual assault, *see* Wis. Stat. § 948.02(1), for sexually touching his six-year-old niece. *State v. Silva*, 670 N.W.2d 385, 387-88 (Wis. Ct. App. 2003). Prior to trial, the state filed a motion in limine seeking to introduce evidence of Silva's three prior sexual assaults of

children (two of which resulted in convictions). Based in part on his attorney's advice that jurors would react negatively to his prior record, Silva waived his right to a jury trial and proceeded to trial before a state circuit court judge in Milwaukee County, Wisconsin.

At trial, the state called as witnesses the six-year-old child, her mother and father, and an investigator who worked on the case. After the court determined that the child understood the difference between truth and fiction, she testified that her uncle, Silva, climbed into bed with her, placed his hand inside her shorts, and rubbed her behind. During cross-examination, defense counsel tested the child's understanding of time by asking when the alleged assault occurred and how long it lasted. Defense counsel also cross-examined the state's remaining witnesses but did not present any evidence on Silva's behalf.

Silva's trial counsel then gave the following closing argument (minus several "ahs" and "ums") reproduced here in its entirety:

> Your Honor, it's very difficult to cross-examine a six-year-old child. I—I also believe that the child was being truthful, to some extent. I'm concerned about the fact that, when she was asked questions about time by the District Attorney—this is after she had testified that the incident, lasted approximately one minute—whether we can give credibility to that statement, whether it was longer or not. The facts still remains is that, she said it took one minute. First degree sexual assault is a very, very serious—very serious crime. I would assume that the State's case is based upon the fact that this young girl was 13—under 13 years of age. I tried to have the Court find out from the witnesses what the extent of the sexual contact was. The extent of the sexual contact was the fact that he had rubbed her buttock, not her vaginal area, and that he had his clothes on. At no time was he exposed. That evidently is substantiated by our Exhibit No. 1, which the police officer recorded by stating that he was clothed.
>
> I suppose technically this is a case of first degree sexual assault. I don't like to say that, however, I believe it's of such insignificant proportions as to what we generally would call a first degree sexual assault, and that is that, I don't believe the State has proved beyond a reasonable doubt the fact that the elements have been proved.
>
> That's the only comment I have to make at this time.

The trial court found Silva guilty and noted that its finding was based on "somewhat uncontested facts." Silva was later sentenced to 25 years of confinement and 20 years of extended supervision.

Silva filed a post-conviction motion and argued, among other things, that his trial counsel was ineffective for two reasons: (1) counsel conceded Silva's guilt during closing argument; and (2) failed to advise Silva that he could, under Wisconsin law, have prevented a jury from learning of the three prior sexual assaults by stipulating to the element of the crime they proved—his motive. The court held a hearing on Silva's post-conviction motion at which his trial counsel testified. However, Silva's counsel on post-conviction focused his questioning exclusively on the facts underlying Silva's second theory of ineffective assistance.

Nevertheless, Silva's trial counsel did shed some light on his general strategy. He testified that he advised Silva to proceed with a bench trial because he thought a jury would be more sympathetic to a child witness than would the judge sitting alone. Trial counsel also explained that he thought Silva's case should never have been charged as a first degree sexual assault because it involved a de minimus touching, but that trial was unavoidable because Silva "was in total denial of the accusations of the matter." The post-conviction court made no finding as to whether Silva's trial counsel conceded his guilt, but it held that Silva could not establish that his counsel was ineffective because, even if counsel's performance was deficient, Silva was not prejudiced.

Silva appealed to the Wisconsin Court of Appeals, challenging the court's conclusions and again arguing that his trial counsel provided ineffective assistance. Silva characterized his trial counsel's closing argument as a concession of guilt, and he argued that such a concession is presumptively prejudicial under *United States v. Cronic*, 466 U.S. 648 (1984). In addressing Silva's argument, the appellate court stated: "Silva argues that his attorney's closing argument, in which he commented favorably on the victim's credibility and conceded that Silva was 'technically' guilty . . . resulted in his attorney 'abdicating his role in the adversarial process.'" The appellate court concluded however: that "Silva's trial attorney did as well as most attorneys would have done. Stating that Silva was 'technically guilty' had two beneficial effects." First, the court explained, counsel's statement "telegraphed to the trial court that if any doubt existed in the trial court's mind, the minor nature of the act could act as a controlling factor in finding Silva not guilty; and second, the strategy emphasized the idea that the matter was overcharged, setting up an argument for leniency at sentencing." The appellate court ultimately held that the attorney's closing argument was "not beyond the realm of reasonably effective representation."

Silva's petition for review in the Supreme Court of Wisconsin was denied, as was his petition for a writ of certiorari in the Supreme Court of the United States.

Silva then filed his habeas corpus petition under 28 U.S.C. § 2254 in the district court, arguing the same ineffective-assistance claim he raised in state court. The district court agreed with Silva that a concession of guilt under the circumstances of his case "would give rise to a presumption of prejudice under *Cronic*." However, while the district judge noted that the Wisconsin Court of Appeals "accepted petitioner's characterization of his attorney's argument as a concession of guilt," he disagreed that such a concession was made. What the district judge found instead was that trial counsel stopped short of asking the court to find his client guilty. The district court thus held that *Cronic* did not apply and that Silva's claim should be analyzed under the usual procedure announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Applying *Strickland*, the district judge determined that Silva failed to establish that he was prejudiced by the closing argument. The judge also rejected Silva's argument that his trial counsel was ineffective for failing to advise him of the option of stipulating to certain elements of the offense.

Silva filed a notice of appeal and an application for a certificate of appealability. The district court granted the application as to both grounds of ineffective assistance of counsel. In his brief to this court Silva's appellate attorney (Brian Kinstler), who has done a splendid job on his client's behalf, has appropriately abandoned any argument that trial counsel was ineffective for failing to advise Silva that he could stipulate to certain elements of the offense.

In a renewed effort to establish on appeal that his trial counsel's conduct should be analyzed under the standard set forth in *Cronic*, rather than that of *Strickland*, Silva begins by arguing that the district court erroneously rejected what he characterizes as a factual finding by the Wisconsin Court of Appeals—that trial counsel conceded guilt during his closing argument. The appellate court impliedly found a concession of guilt in counsel's closing argument, Silva says, by reading counsel's statement that "technically this is a case of first degree sexual assault" as equivalent to a statement that Silva was "technically guilty." The state counters that the district court's decision was proper because the Wisconsin Court of Appeals made no explicit factual finding and, even if there was an implicit finding, the record does not support characterizing the lawyer's closing argument as a concession of guilt.

We recognize that the Wisconsin Court of Appeals characterized counsel's statement as admitting his client was "technically guilty." And it is true that state court factual findings, even implicit ones, are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1); *Mendiola v.*

*Schomig*, 224 F.3d 589, 592 (7th Cir. 2000); *Sprosty v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996). But we question whether by using the "technically guilty" language the appellate court intended to make a factual finding as opposed to simply abbreviating Silva's argument. And if we were free to decide the question on our own, we would be inclined to agree with the district court that this was not a concession of guilt, especially taking into account counsel's parting remark that the state failed to prove its case beyond a reasonable doubt.

But regardless how the Wisconsin Court of Appeals characterized the closing argument, Silva still comes up short here because the state court reasonably applied the correct federal standard when, under its equivalent of *Strickland*, it held that defense counsel's closing argument was not "beyond the realm of reasonably effective representation," *Silva*, 670 N.W.2d at 393 (internal quotation omitted). *See* 28 U.S.C. § 2254(d)(1). Silva contends that applying *Strickland* was contrary to federal law, *see id.*, because his case is actually governed by *Cronic*, which holds that prejudice is presumed if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," 466 U.S. at 659. Silva contends that his attorney not only ceased to act as his advocate at closing argument but, at that point, "did the prosecution's job."

What Silva overlooks is that the Supreme Court recently clarified that *Cronic* applies only where the defense attorney's failure to test the prosecutor's case was complete, and not where counsel made isolated missteps during the proceeding. *Bell v. Cone*, 535 U.S. 685, 696-97 (2002); *see also Barrow v. Uchtman*, 398 F.3d 597, 603 n.4 (7th Cir. 2005) (noting that *Strickland*, not *Cronic*, governed ineffective-assistance claim because counsel's failings were not complete); *United States v. Holman*, 314 F.3d 837, 839 n.1 (7th Cir. 2002) (emphasizing that *Cronic* would not apply if counsel mounts even partial defense). Silva has never contended, and does not now contend, that his trial counsel's failings were complete. In fact, as noted by every court that has reviewed Silva's case, his attorney made the best of a difficult situation; the trial involved no physical evidence, Silva did not testify, and the state's primary witness was a six-year old child who trial counsel cross-examined as well as and as delicately as could be expected given the nature of the allegations. Thus, under *Bell*, Silva is not entitled to a presumption of prejudice growing out of his trial counsel's performance.

Moreover, aside from *Bell*, the Supreme Court has also refused to apply *Cronic* where a concession of guilt is strategic. *Fla. v. Nixon*, 543 U.S. 175 (2004). In *Nixon* the Court held that counsel's concession in the guilt phase of a capital case was a strategic choice to preserve his credibility for the sentencing phase and that it did not constitute a "failure to function in any meaningful sense as the Government's adversary." *Id.* at 190-91 (internal quotations omitted). Silva argues that his attorney could not have made a similar strategic choice because his was not

a capital case. However, in *Nixon* the Supreme Court expressly reserved the question whether a concession of guilt in a noncapital, or "run-of-the-mine trial," would be a strategic decision requiring a client's consent, 543 U.S. at 190, and we have found no Supreme Court cases that answer that question. And if "[n]o such principal has been adopted to date by the Supreme Court," then "§ 2254(d)(1) precludes its recognition for the first time on collateral review." *Holman v. Gilmore*, 126 F.3d 876, 885 (7th Cir. 1997). Thus, Silva cannot show that the Wisconsin Court of Appeals' decision applying *Strickland* was contrary to "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

That leaves Silva with the burden of showing that the state court unreasonably applied *Strickland*. He had the opportunity at his evidentiary hearing in state court to lay the foundation for a claim that his attorney's closing argument amounted to ineffective assistance, but he focused instead on his now-abandoned, alternate theory of ineffective assistance. And though it is too late now for Silva to expand on the factual predicate for his claim, *see* 28 U.S.C. § 2254(e)(2); *Dalton v. Battaglia*, 402 F.3d 729, 737 (7th Cir. 2005) (explaining that an evidentiary hearing will be held in federal court only where a factual basis for petitioner's claim went undeveloped through no fault of his own), we nevertheless asked counsel at oral argument in this appeal to tell us whether or how Silva might have been prejudiced within the meaning of *Strickland*. Counsel refused to concede that Silva suffered no prejudice under *Strickland* (and we certainly can understand why counsel would not want to make that sort of concession given the nature of the underlying claim). Ultimately, however, counsel failed to persuade us that Silva was prejudiced by his trial counsel's closing argument given the evidence presented at trial.

For these reasons, the judgment of the district court is AFFIRMED.