COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP1280**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015CF454

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DANIEL J. MICK,

   DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Portage County: THOMAS B. EAGON, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 **PER CURIAM.** Daniel Mick appeals the circuit court's denial of his pro se WIS. STAT. § 974.06 (2019-20)[1] postconviction motion, the order denying his motion for reconsideration, and the order denying the supplemental § 974.06 motion he filed with the assistance of retained postconviction counsel. We conclude that the court properly denied the motions without holding an evidentiary hearing. Therefore, we affirm.

## BACKGROUND

¶2 Daniel Mick was convicted, following a jury trial, of one count of first degree sexual assault of a child and two counts of intentionally causing a child to listen to and view sexually explicit content.[2] The child, who we refer to as "Joan,"[3] was six years old at the time of the conduct at issue in this case. We set forth additional background about the charges and the trial as needed below.

¶3 Through appellate counsel, Mick directly appealed his judgment of conviction in this court without first filing a postconviction motion pursuant to WIS. STAT. § 974.02. *See **State v. Daniel J. Mick**, No. 2017AP1642-CR, unpublished slip op. (WI App June 14, 2018). In his direct appeal, Mick argued that the circuit court erred by granting the State's motion in limine to exclude his expert witness from testifying at trial and, further, that the exclusion of that testimony violated his constitutional right to present a defense. *Id.*, ¶13. Mick

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version.

[2] It is undisputed that the sexually explicit content in question did not involve images of children. To be clear, there is no suggestion in the record that Mick has ever possessed or viewed child pornography.

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym to protect the identity of the victim, "Joan," as well as her mother, who we refer to as "Cindy."

also asked us to exercise our power of discretionary reversal and order a new trial in the interest of justice under WIS. STAT. § 752.35. *Id.*, ¶36. We issued an opinion in June 2018, which rejected Mick's arguments and affirmed his judgment of conviction. *See generally id.*

¶4 In September 2019, Mick filed a 75-page pro se motion for postconviction relief pursuant to WIS. STAT. § 974.06. Among other things, Mick's pro se motion argued that his trial and appellate counsel had been ineffective and that his due process rights had been violated.

¶5 The State moved for summary dismissal of the pro se motion, arguing that the ineffective assistance of counsel claims were procedurally barred because Mick failed to assert those claims in a WIS. STAT. § 974.02 motion prior to his direct appeal. *See* WIS. STAT. § 974.06(4); *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994) (interpreting the procedural bar in § 974.06(4)). In the alternative, the State argued that Mick was not entitled to an evidentiary hearing because the motion did not allege sufficient facts to entitle him to relief. *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. In an order dated April 29, 2020, the circuit court denied the motion without holding a *Machner* hearing.[4] Mick filed a motion for reconsideration, and the circuit court denied that motion.

¶6 Mick then retained new appellate counsel, who filed a notice of appeal from both orders on July 28, 2020. The same day, retained counsel filed a

---

[4] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). A *Machner* hearing is "[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case." *State v. Balliette*, 2011 WI 79, ¶31, 336 Wis. 2d 358, 805 N.W.2d 334.

"supplemental" WIS. STAT. § 974.06 motion and a motion for reconsideration of the circuit court's April 29, 2020 decision.[5] Collectively, the supplemental motion and motion for reconsideration elaborated on the arguments that Mick presented in his pro se motion regarding ineffective assistance of counsel, argued that counsel was ineffective in other ways not articulated in Mick's pro se motion, and raised a new argument about newly discovered evidence.

¶7      The State moved for summary dismissal of the motions based on Mick's failure to raise the new issues in his direct appeal and his pro se WIS. STAT. § 974.06 motion, and because Mick failed to show that the circuit court made any manifest error of law or fact justifying reconsideration of its decision on the issues Mick had previously raised.  The State also argued that Mick was not entitled to a new trial based on newly discovered evidence.

¶8      The circuit court denied the supplemental motion and motion for reconsideration without holding a **Machner** hearing.  Mick filed an additional notice of appeal from that order.

## DISCUSSION

¶9      We begin our discussion with a threshold issue raised by the State regarding our jurisdiction over this appeal.    After rejecting the State's jurisdictional argument, we consider whether the issues raised in Mick's pro se

---

[5] The State takes issue with Mick referring to his motion as a "supplemental" motion, rather than as a "second" motion, because, at the time the supplemental motion was filed, Mick's pro se motion had already been denied by the circuit court and could no longer be supplemented. *See* **State v. Evans**, 2004 WI 84, ¶9, 273 Wis. 2d 192, 682 N.W.2d 784, *abrogated on other grounds by* **State ex rel. Coleman v. McCaughtry**, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900.  The State's point about nomenclature is well taken, but this opinion nevertheless refers to Mick's motion using the name under which it was filed.

WIS. STAT. § 974.06 motion and his supplemental § 974.06 motion relating to ineffective assistance of counsel are procedurally barred. We assume without deciding that the issues raised in the pro se motion are not barred; however, we conclude that the issues raised for the first time in the supplemental motion are barred and we address them no further. We then consider and reject the ineffective assistance of counsel claims raised in Mick's pro se motion. Finally, we conclude that Mick is not entitled to a new trial based on newly discovered evidence.

## I. Jurisdiction

¶10 Appeals of WIS. STAT. § 974.06 proceedings are governed by the procedures for civil appeals, *see* § 974.06(6) and WIS. STAT. RULE 809.30(2)(L), and a timely notice of appeal is a jurisdictional prerequisite, *see* WIS. STAT. RULE 809.10(1)(e). The pertinent timelines are set forth in WIS. STAT. § 808.04(1). Under § 808.04(1), a notice of appeal must be filed within 90 days of the entry of a final judgment or order, except that the deadline is shortened to 45 days "if written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order as provided in [WIS. STAT. §] 806.05(5)."

¶11 The State asserts that the 45-day deadline applies to Mick's appeal of the April 29, 2020 order denying his pro se motion. It goes on to assert that Mick received the April 29, 2020 order in written form, shortening the appeal deadline to 45 days, and that Mick's notice of appeal, which was filed 90 days after entry of the order, was untimely.

¶12 The State's assertions are incorrect. To be sure, Mick received the written order that denied his pro se motion, but that is not the same thing as written "notice of entry" of that order, as that term is used in WIS. STAT.

§§ 808.04(1) and 806.05. Notice of entry refers to a separate written document, other than the order, which is served by a party after a final order is entered, and which contains the date of entry of that final order. *See* § 806.05(3); *Soquet v. Soquet*, 117 Wis. 2d 553, 557, 345 N.W.2d 401 (1984). Here, the State does not point to any notice of entry that it served on Mick; therefore, the deadline to appeal was not shortened to 45 days. Mick's appeal, which was filed on the 90th day, was timely, and we have jurisdiction over this appeal.

## II. *Escalona-Naranjo* Procedural Bar

¶13 We now turn to the claims of ineffective assistance of counsel that Mick raised in his pro se WIS. STAT. § 974.06 motion[6] and in his supplemental § 974.06 motion.[7] A threshold question is whether these claims are procedurally barred under § 974.06(4) and *Escalona-Naranjo* because Mick did not raise them in a WIS. STAT. § 974.02 motion prior to his direct appeal.

¶14 WISCONSIN STAT. § 974.06(4) provides that "[a]ll grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion." Further, "[a]ny ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived … in any other

---

[6] The issues Mick raised in the pro se motion and renews on appeal are whether trial counsel's performance was deficient in three general areas: (1) for failing to adequately impeach Joan's mother; (2) for failing to introduce an alternative explanation for the source of Joan's sexual knowledge; and (3) for failing to object to certain evidence, including alleged *Haseltine* violations. *See State v. Haseltine*, 120 Wis. 2d 92, 97, 352 N.W.2d 673 (Ct. App. 1984).

[7] The additional ineffective-assistance-based issues that Mick raised for the first time in the supplemental motion and renews on appeal are whether trial counsel was ineffective for not impeaching Cindy with a statement she made to police about the timing of Joan being in counseling; for not objecting to Cindy's testimony that she could tell when Mick was lying; for not attempting to exclude portions of the forensic interview; and for not attempting to exclude Cindy's testimony that Mick was "abusive."

proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds" that the defendant had a "sufficient reason" for not asserting or inadequately raising the ground "in the original, supplemental or amended motion." *Id.*

¶15    In *Escalona-Naranjo*, our supreme court determined that a defendant who could have but did not challenge his attorney's effectiveness through a WIS. STAT. § 974.02 motion prior to his direct appeal must show a "sufficient reason" for that failure when asserting the ground in a later WIS. STAT. § 974.06 motion. *Escalona-Naranjo*, 185 Wis. 2d at 181-82, 184; *see also* ***State v. Lo***, 2003 WI 107, ¶44 & n.11, 264 Wis. 2d 1, 665 N.W.2d 756 ("claims that could have been raised on direct appeal … are barred from being raised in a subsequent § 974.06 postconviction motion absent a showing of a sufficient reason" they were not previously raised); ***State v. Romero-Georgana***, 2014 WI 83, ¶35, 360 Wis. 2d 522, 849 N.W.2d 668.

¶16    Here, like the defendant in *Escalona-Naranjo*, Mick had an opportunity to raise claims about the ineffective assistance of trial counsel in a postconviction motion under WIS. STAT. § 974.02 prior to his direct appeal, but he did not do so. Therefore, like the defendant in *Escalona-Naranjo*, Mick must establish a "sufficient reason" for not raising his claims in a § 974.02 motion.

¶17    Mick alleges that he chose to forgo filing a WIS. STAT. § 974.02 motion in favor of pursuing a direct appeal based on his appellate counsel's erroneous legal advice. This allegation is supported by affidavits that Mick and his sister filed along with the pro se motion. Specifically, they aver that appellate counsel told them that Mick could file a § 974.02 motion challenging the effectiveness of his counsel or a direct appeal, but not both, that Mick would have

to choose, and that it would be better to forego a § 974.02 motion and instead pursue a direct appeal. Mick argues, and we agree, that such advice misstates the law—Wisconsin Statutes allow a defendant to pursue a § 974.02 motion followed by a direct appeal. *See* § 974.02(1); WIS. STAT. § 809.30(2).

¶18    We assume without deciding that Mick's reliance on counsel's erroneous advice is a sufficient reason for not raising the ineffective assistance claims in his pro se WIS. STAT. § 974.06 motion.[8]  It follows that the issues raised in his pro se motion are not procedurally barred, and we address them on the merits in this following section of this opinion.

¶19    However, the same cannot be said of the additional ineffective-assistance-based issues that Mick raised for the first time in the supplemental motion he filed with the assistance of retained postconviction counsel.[9]  Again, we assume without deciding that appellate counsel's erroneous legal advice was a sufficient reason for not raising these additional issues in a WIS. STAT. § 974.02 motion prior to his direct appeal. However, at the time he filed his supplemental motion, the circuit court had already decided his pro se WIS. STAT. § 974.06 motion, which did not raise these additional issues. Therefore, Mick must also plead a "sufficient reason" for not raising these new issues in his pro se motion.

---

[8] In their appellate briefing, the parties dispute whether Mick must also prove that the issues he raised in his pro se motion are "clearly stronger" than the issues his appellate counsel raised on direct appeal. *See* **State v. Romero-Georgana**, 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668. An appellate court need not decide every non-dispositive issue raised by the parties. **Barrows v. American Fam. Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013). For purposes of this appeal, we assume without deciding that, if Mick must make this showing, he has done so.

[9] The parties appear to agree that Mick's newly-discovered-evidence-based claim is not procedurally barred. We address that claim in the final section of this opinion.

¶20 As best as we understand Mick's argument, he contends that he did not raise these issues in his pro se motion because he is not a trained lawyer and "lacked knowledge regarding the factual or legal basis for some of the claims." To the extent that Mick is relying on an asserted lack of knowledge of "the factual or legal basis" for "some" of the new claims, this assertion is conclusory and undeveloped. *See Allen*, 274 Wis. 2d 568, ¶9. Additionally, the "vast majority" of WIS. STAT. § 974.06 motions are filed by pro se litigants, *State ex rel. Wren v. Richardson*, 2019 WI 110, ¶27 n.21, 389 Wis. 2d 516, 936 N.W.2d 587, and Wisconsin courts have not recognized pro se status alone as a "sufficient reason" for not raising a claim. Therefore, as to the issues that were first raised in Mick's supplemental motion, he has not alleged a sufficient reason to overcome the procedural bar, and we address those issues no further.

### III. Ineffective Assistance of Counsel Claims Raised in Mick's Pro Se WIS. STAT. § 974.06 Motion

¶21 To prevail on a claim of ineffective assistance of counsel, a defendant has the burden to prove that trial counsel's performance was deficient and, also, that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[10] To demonstrate deficient performance, the defendant must show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors,

---

[10] "Whether counsel's actions constitute ineffective assistance presents a mixed question of law and fact." *State v. Tourville*, 2016 WI 17, ¶16, 367 Wis. 2d 285, 876 N.W.2d 735. We uphold the circuit court's factual findings "'concerning circumstances of the case and counsel's conduct and strategy'" unless those findings are clearly erroneous. *State v. Silva*, 2003 WI App 191, ¶16, 266 Wis. 2d 906, 670 N.W.2d 385 (quoted source omitted). Whether counsel's performance was deficient and prejudicial are both questions of law that we review de novo. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

the result of the proceeding would have been different." *Id.* at 694. If the factual allegations in a defendant's motion are sufficient to entitle the defendant to relief, then the circuit court must hold a *Machner* hearing to test the allegations. *Allen*, 274 Wis. 2d 568, ¶9. However, a court may deny a motion without a hearing if the motion fails to allege sufficient facts to raise a question of fact, if the motion presents conclusory allegations or subjective opinion, or if the record conclusively demonstrates that the defendant is not entitled to relief. *Id.*

¶22 As mentioned, Mick alleged in his pro se motion that his trial counsel's performance was deficient in three general areas: (1) for failing to adequately impeach Joan's mother; (2) for failing to introduce an alternative explanation for the source of Joan's sexual knowledge; and (3) for failing to object to alleged *Haseltine* violations. Before addressing these claims, it is helpful to provide additional background about the allegations in the complaint and the evidence and arguments presented at trial. After providing that additional background, we analyze the three issues Mick raised in his pro se motion, rejecting each in turn.

## A. Trial Evidence

¶23 The criminal complaint alleged that, in August 2015, Mick showed pornography to and sexually assaulted six-year-old Joan for purposes of sexual gratification. Joan's mother, Cindy, was married to Mick and is the mother of Mick's son. Mick and Cindy's marital relationship had soured in 2015, and they were on the verge of a divorce and a custody battle over their son. Cindy first reported the allegations that Mick had sexually abused Joan on November 19, 2015, the same day Cindy learned that Mick was seeking a harassment injunction against her and had filed for divorce.

¶24    The allegations in the criminal complaint were based on a video-recorded statement that Joan gave to a forensic interviewer in November 2015, approximately three months after the events in question.[11]   Joan discussed two incidents in her recorded statement, which was played to the jury at trial.  The first incident occurred at the family's home.  On that occasion, Mick showed Joan images on his phone about "how to make babies" and masturbated while Joan watched.  The second incident occurred in the family's van.  On that occasion, Mick took Joan out for ice cream and they drove to a park where Mick "was looking at the bad stuff on his phone" and put his penis in Joan's mouth.  In discussing these incidents, Joan displayed a knowledge about sexual topics including ejaculation and the function of a clitoris that would not be possessed by most six-year-olds.

¶25    Notably, the forensic interview was the only direct evidence of Mick's guilt presented at trial—Joan, who was seven years old by the time of the trial, testified that she did not recall anything about the incidents she had described in her forensic interview.

¶26    Throughout the trial, the defense theory was that Cindy had invented the allegations as a means to punish Mick and to improve her position in the impending custody battle, and that her influence over Joan led Joan to repeat those allegations.

---

[11] *See* WIS. STAT. § 908.08 (providing a process by which, after notice and a hearing in which the circuit court makes certain findings of fact, the testimony of a child who is available to testify may be presented by audiovisual recording, provided that the child will be immediately available for cross-examination).

¶27 During opening statements, Mick's trial counsel urged the jury to put the allegations "in context with what was really going on at the time"—specifically, that Cindy first reported the allegations in the middle of a contentious divorce and impending child custody battle, following a heated text message exchange on November 18, 2015. During that text exchange, Cindy told Mick that she was building a case against him about his use of pornography, and that Mick was going to lose custody of their son when that issue played out in court. As trial counsel explained, Mick obtained a temporary restraining order and sought a harassment injunction against Cindy on November 19, 2015, and, in response to a police officer informing her about the court order, Cindy first accused Mick of molesting Joan. Counsel emphasized that the jury should "listen to where these stories sprang from," and that they all "started with [Cindy] in the middle of a divorce." Counsel stated: "The timing of this is crucial, that when [police] call [Cindy] about her harassing behavior, [Mick] is now accused for the first time ever of child molestation, of sexually assaulting [Joan]."

¶28 Trial counsel continued with this theme during the evidentiary portion of the trial, eliciting evidence in an attempt to impeach Cindy's credibility and suggest her motive to encourage Joan to make false allegations. This included evidence about the timing of Cindy's report. Counsel presented police officer testimony and documentary evidence showing that Cindy first reported that Mick molested Joan during her initial telephone conversation with a police officer, in direct response to the officer informing Cindy of Mick's request for a harassment injunction. In contrast, when Cindy testified, she denied that she had been aware of Joan's allegations against Mick at the time of her initial conversation with the officer. Instead, Cindy testified that, during that first call, she told the officer that Mick had a "porn addiction." Cindy maintained that Joan did not disclose Mick's

conduct until after that first call, and that Joan's disclosure occurred in direct response to Joan overhearing Cindy tell the officer about Mick's use of pornography. Counsel asserted that this conflicting evidence tended to suggest that Cindy was not being truthful, and that she was attempting to hide something about how and when the allegations against Mick emerged.

¶29     Trial counsel vigorously cross-examined Cindy. During the cross-examination, Cindy acknowledged that, the night before the allegations came out, she and Mick had a text exchange about custody issues. She acknowledged that the text exchange "went bad at some point and turned into an argument," and that Cindy said "something ... like" "have fun trying to win [the custody case]." She acknowledged that she had used Mick's password to break into his email and online accounts, and that she told him she found things in those accounts that she would use against him in court.[12] Trial counsel asked Cindy about a particularly threatening text message in which Cindy told Mick: "You haven't seen me yet, Bitch. You want to play dirty, I'll get FILTHY on you." Cindy testified that she did not remember making that statement, but also did not deny that she had. Cindy acknowledged that officers served her with a restraining order as a result of her November 18 text exchange with Mick, but that she "didn't have to go [to court to defend against entry of an injunction] because [Mick] was in jail at the time."

---

[12] As counsel started to ask Cindy about certain details of the text exchange, the State objected, and the circuit court took up the objection outside the presence of the jury. Trial counsel explained that the details of Cindy's threats were relevant to show that she was motivated to make up allegations against Mick. The court allowed counsel to question Cindy about her threats to build a case against Mick, but it stated that it would not allow a "mini-trial" about "collateral issues" regarding particular steps Cindy took to build that case. Mick has not argued that the court's evidentiary decision was an erroneous exercise of discretion.

¶30 Trial counsel also elicited testimony from multiple witnesses that children can be impressionable and are susceptible to outside influences, and that the investigators would not want a child to have conversations with an adult that could lead, mislead, or taint the child's statement. To that end, the social worker who worked with the family testified that she advised Cindy not to talk to Joan about the incidents. However, during trial counsel's cross-examination of the social worker, she acknowledged that she did not give this advice to Cindy until several days after Cindy reported the allegations. Additionally, during his cross-examination of the forensic interviewer, trial counsel pointed to a number of times during the interview in which Joan repeated something Cindy told her. Additionally, counsel got the forensic interviewer to acknowledge that her job was not to "challenge or question" information provided by a child during a forensic interview and, further, that she did not ask Joan whether Cindy told Joan to say anything during the interview. The forensic interviewer testified that parents are not allowed in the observation room because their presence can affect a child. However, on cross-examination, the forensic interviewer acknowledged that Joan knew that adults were watching the interview take place on closed circuit television, and that the forensic interviewer did not tell Joan that Cindy was not in the observation room.

¶31 Mick also testified at trial. Among other things, he testified about his text exchange with Cindy on November 18, 2015. According to Mick, they had been texting back and forth about the placement of their son, and the exchange "quickly escalated to a broad range of things," including "threats from her, harassments, threatening me that she was going to take me to court." Mick testified that Cindy threatened that Mick's ex-wife's mother, who works for a district attorney, had been "using her detective to build a case against [Mick].

14

Basically, saying that [Mick] would not be able to see [their son] again, or that it would be at [Cindy's] terms."

¶32    Mick also testified about his use of pornography. He acknowledged that he watched pornography a lot, and that he and Cindy argued about that subject during their marriage. Mick also acknowledged that there was one instance in which Cindy caught him viewing pornography on his phone while Joan was in the same room watching television. However, Mick testified that, on that occasion, he thought that Joan had fallen asleep and, in any event, Joan did not see what was on his phone. Mick testified that, apart from that one incident, there were no other occasions in which he viewed pornographic images while he was in the same room or in a vehicle with Joan or any other child. He categorically denied assaulting Joan.

¶33    In his closing argument, trial counsel repeated the themes he had developed during trial—Cindy's role in bringing the allegations to light, the timing of Cindy's report in relation to her threat that she was building a case against Mick and the filing of the restraining order and injunction, and the evidence counsel had elicited suggesting that Cindy was not being truthful about the timing and circumstances under which Joan disclosed the information. He also emphasized the testimony the jury heard about children being impressionable and susceptible to influence, and the fact that Cindy had six days between her report and the forensic interview in which to influence Joan's statement. Counsel argued that the role of the forensic interview was to collect information from the child, not to investigate whether that information is true, and that there were plenty of reasons to "wonder about" the veracity of Joan's video statement.

¶34    The jury found Mick guilty of one count of first degree sexual assault of a child and two counts of intentionally causing a child to listen to and view sexually explicit content.

## B. Alleged Failure to Adequately Impeach Cindy

¶35    In his pro se motion, Mick argues that trial counsel was ineffective for failing to use available evidence to impeach Cindy's credibility. As summarized in his opening appellate brief, Mick argued that trial counsel should have impeached Cindy with "various facts, including the text messages from [November 18, 2015] establishing [Cindy's] motive to lie and undermining the timeline of [Joan's] alleged disclosures of abuse."

¶36    However, as shown above, trial counsel extensively impeached Cindy's credibility at trial, and the November 18 text message exchange was a significant focus of counsel's questioning and argument. As also shown above, counsel repeatedly questioned Cindy's motive. He also demonstrated that Cindy's testimony about Joan's spontaneous disclosure of the allegations after she overheard Cindy talking to a police officer about Mick's use of pornography was contradicted by the disinterested officer's testimony and police report. At best, Mick's pro se motion argues that counsel should have done more of what he was already doing, and that, had counsel done more of the same, the jury would have reached a different verdict. We disagree for reasons we now explain.

¶37    There is just one specific topic that Mick's pro se motion contends trial counsel could have cross-examined Cindy about but failed to do so. That topic is Cindy's assertion, during the November 18 text message exchange, that

"[Joan] is in counseling. She's admitting lots of stuff. The therapist will also be in court."[13] For reasons we now explain, we conclude that the circuit court properly denied Mick's motion without holding a *Machner* hearing on trial counsel's failure to cross-examine Cindy about her text message regarding Joan's therapist.

¶38 We first observe that counsel could have had an objectively reasonable strategic reason for not addressing this topic in cross-examination.[14] It is apparent that counsel's strategy was to persuade the jury that Cindy made up the allegation on November 19, in response to learning about the harassment injunction. Any assertion that Joan said something to a therapist before November 19 that could be used against Mick in court might have undermined that strategy. *See State v. Kimbrough*, 2001 WI App 138, ¶¶31-35, 246 Wis. 2d 648, 630 N.W.2d 752 (even if trial counsel lacked a strategic reason at the time, counsel's performance was not deficient if it was one that an attorney could reasonably have taken after considering the question in light of the information available to counsel).

---

[13] In his supplemental motion, Mick argues that this assertion was yet another lie by Cindy. Mick contends that, in her audio-recorded interview with the police, Cindy "admitted" that Joan had not yet been in counseling on November 18, 2015, when Cindy said that Joan's non-existent therapist would testify against Mick. As discussed above, the new arguments Mick advances in his supplemental motion are procedurally barred.

[14] Choices made by counsel are not constitutionally deficient if they were the result of a strategic decision rationally based on the law and facts. *See State v. Hunt*, 2014 WI 102, ¶55, 360 Wis. 2d 576, 851 N.W.2d 434. Although the circuit court did not hold a *Machner* hearing and we do not have the benefit of trial counsel's testimony, deficiency is evaluated on an objective basis. *See State v. Kimbrough*, 2001 WI App 138, ¶¶31-35, 246 Wis. 2d 648, 630 N.W.2d 752.

¶39     Nor has Mick shown that the omission prejudiced his defense.  The jury was repeatedly told that Cindy was threatening to build a case against Mick, and Mick does not explain how one additional question focused on that same end would lead to a reasonable probability that the jury would have acquitted him.  Based on our independent review of the evidence, it is far more likely that the jury may have believed that Cindy had a motive to hurt Mick and had not been honest about the timing and circumstances of Joan's disclosure, but that the jury also believed that Joan's underlying statements about Mick's conduct were true.

¶40     Additionally, to the extent that Mick's pro se motion can be read to argue that counsel should have introduced a copy of the text message exchange as an exhibit, we conclude that the circuit court properly denied the motion without a *Machner* hearing.  Again, counsel could have had an objectively reasonable strategic reason for not seeking to introduce an exhibit of the text exchange.  Even if the circuit court would have allowed it into evidence, *see supra* n.12, the exchange contained unfiltered and salacious allegations about Mick and demeaning language and insults from Mick that could have been very damaging in the eyes of the jury.  Counsel could have reasonably thought it best to cherry pick the most helpful statements from the text exchange, rather than publishing it all— the good, the bad, and the ugly—for the jury to read.  *Kimbrough*, 246 Wis. 2d 648, ¶¶31-35.  And again, Mick has not proven prejudice—the jury heard the statements in the text exchange that were the most helpful to Mick's defense from counsel's questioning, and also from Mick's direct examination.  We conclude that there is no reasonable probability that the jury, having seen an exhibit with the full text exchange, would have determined that Mick was not guilty and acquitted him.

### C. Failure to Introduce Alleged Evidence of Potential Alternative Sources of Joan's Sexual Knowledge

¶41    Mick also argued in his pro se motion that trial counsel was ineffective for failing to present evidence about alternative potential sources for Joan's sexual knowledge.  During the trial, counsel clearly and repeatedly insinuated that Cindy was the source of Joan's sexual knowledge.  In his motion, Mick described two alternative potential sources:  (1) a prior allegation of misconduct by Joan's father, including an allegation that he exposed himself to Joan and slept naked with her; and (2) Joan's exposure to a sex toy business owned by Joan's grandmother.

¶42    Mick suggests that if counsel had been able to present admissible evidence of an alternative source of such knowledge, it may have been helpful to Mick's defense.  This is because Joan's recorded statement demonstrated that Joan had extensive sexual knowledge, which she communicated using language and terms that appeared to be age-appropriate.  Among other things, Joan repeatedly described Mick "shaking" his "private part" with his hand until he "squeezed" the "white stuff" out.  She described Mick using toilet paper to make sure the "white stuff" did not "spill."  She stated that, when he put his private part in her mouth, the "white stuff came into [her] mouth" and tasted "super duper salty."  She further described how Mick told her to take her pants off and viewed her pubic area, and that Mick said that the "white dots" he observed were "hairs about to grow."  Finally, she described Mick telling her about a "thingy" on her pubic area that you can rub to "make[] you cool and hot" and "awesome."

¶43    The circuit court properly denied Mick's motion without a ***Machner*** hearing on trial counsel's failure to present these potential alternative sources of Joan's sexual knowledge.  As for Mick's argument about the prior allegations

19

against Joan's father, there are significant barriers to introducing such evidence, including WIS. STAT. § 972.11(2)(b),[15] and Mick has not developed any argument showing that there was any such evidence that would have been admissible at trial. Turning to Mick's argument about Joan's exposure to her grandmother's sex toy business, Mick again fails to develop any argument that evidence on this topic would be admissible. Nor does he show that counsel's omission prejudiced his defense. At best, the affidavits by Mick and his sister indicated that Joan's grandmother used the words "cool," "hot," and "awesome" to describe products she sold, but they provide no non-speculative link accounting for Joan's other sexual knowledge, especially her graphic description of ejaculate and ejaculation.[16]

### D. Failure to Object to Alleged Haseltine Violations

¶44 A *Haseltine* violation occurs when a witness usurps the function of the jury by opining that another witness is telling the truth. *State v. Haseltine*, 120

---

[15] WISCONSIN STAT. §972.11(2)(b), commonly referred to as the "rape shield statute," provides that, with certain exceptions, "any evidence concerning the complaining witness's prior sexual conduct … shall not be admitted into evidence" during a prosecution for certain crimes including sexual assault of a child. *See also State v. Pulizzano*, 155 Wis. 2d 633, 651-52, 456 N.W.2d 325 (1990) (providing that, under certain circumstances, a defendant may have a constitutional right to present such evidence, despite the rape shield statute, if a defendant makes an offer of proof satisfying a five-factor test).

[16] Along similar lines, Mick's pro se motion also argued that Joan was "developmentally delayed," making her an easy target for manipulation, and that counsel should have introduced evidence of Joan's intellectual and developmental deficits at trial. We reject this argument for two reasons. First, Mick contends that he raised this issue with trial counsel, but that counsel declined to pursue this issue because it would look "bad" for the defense to attack Joan's intellect at trial. That was a reasonable strategic decision, and we will not second guess it on appeal. Second, trial counsel obtained categorical admissions from social workers and the forensic interviewer that, as a general matter, children are susceptible to influence. Therefore, counsel was able to achieve the same end without the risk of alienating the jury by pointing out Joan's deficits. Mick fails to meet his burden to show a reasonable probability of a different result had counsel specifically raised Joan's intellectual and developmental deficits at trial.

Wis. 2d 92, 97, 352 N.W.2d 673 (Ct. App. 1984). In his pro se motion, Mick argued that the direct examination and cross-examination of the forensic interviewer elicited two *Haseltine* violations.

¶45 The first alleged *Haseltine* violation occurred when, in response to the prosecutor's questioning, the forensic interviewer stated that a forensic interview will be scheduled only if there is "credible information that a child has been put at risk."[17] Mick does not develop any argument showing that this constitutes an opinion that Joan was telling the truth, and we reject it on that basis.

¶46 The second alleged *Haseltine* violation occurred when trial counsel was attempting to get the forensic interviewer to identify the difference between information that is "credible" and information that is "reliable." In response to this questioning, she stated: "I use the term credible when, if—in this case, whether this child was providing her statement, she was providing her information in a free, narrative form.… To me, her testimony of her interview, the information she provided, I view that as credible."

¶47 We begin by observing that the circuit court determined that counsel had an objectively reasonable strategic reason for asking the questions that elicited these responses. Here, it is evident that counsel was attempting to show that the purpose of the forensic interview was to collect information from Joan, not to test the veracity of her statement. That is, counsel emphasized that none of the forensic interviewer's questions were aimed at questioning the accuracy of Joan's

---

[17] Mick's pro se motion also refers to testimony from the social worker that Joan's report was sufficient to schedule a forensic interview, but his appellate briefing does not identify that testimony, much less develop an argument about it on appeal. We discuss the social worker's testimony no further.

statement, nor did the forensic interviewer ask questions to determine whether Joan's statement had been influenced by Cindy or anyone else. Although counsel may not have gotten all of the answers he hoped for, that does not make his performance deficient.

¶48 We turn to whether trial counsel was ineffective for not objecting and moving to strike the forensic interviewer's response to his questioning. In addressing this issue, we assume without deciding that counsel could have objected to testimony that he himself elicited and, further, that the court would have stricken the forensic interviewer's testimony. Even so, Mick fails to persuade us that he was prejudiced by any mistake.[18] During his closing arguments, trial counsel argued that the accuracy of Joan's recorded statement was in question because investigators assumed that Cindy's report was true, and neither the forensic interviewer nor any other member of the police considered whether Joan's statement might have been coached by Cindy. We do not see any reasonable probability that the jury would have credited this defense theory had the court stricken the testimony in question.

## IV. Newly Discovered Evidence

¶49 Finally, Mick contends that he is entitled to a new trial based on newly discovered evidence. To prevail, Mick must prove the following four factors, commonly referred to as the *Plude* factors, by clear and convincing evidence: (1) the evidence was discovered after conviction; (2) the defendant was

---

[18] Mick points out that a court should consider the cumulative prejudicial effect of all deficiencies. *See* **State v. Thiel**, 2003 WI 111, 264 Wis. 2d 571, 665 N.W.2d 305. This is an accurate statement of the law. However, as this is the sole issue for which we assume deficient performance, there is nothing to cumulate in this case.

not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not cumulative. ***State v. Plude***, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42. If the defendant meets his burden of proof regarding the ***Plude*** factors, the court considers whether "'there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt.'" ***State v. Edmunds***, 2008 WI App 33, ¶22, 308 Wis. 2d 374, 746 N.W.2d 590 (quoted source omitted).

¶50 The new evidence in question is Mick's Google search history from April 2015, four months before the conduct at issue in this case. This search history shows that, in April 2015, Mick asked Google, "what do I do if my daughter seen me masterbaiting?" and "can I lock the data on my cell phone?"[19] Mick contends that he had completely forgotten about an incident in April 2015 that lead to these search queries until he reviewed this search history. He now recalls that he was in his bedroom masturbating and watching pornography on his phone, and Joan walked into the room. Mick contends that he was very embarrassed about what happened, and that he wanted to take steps to ensure that it would never happen again. According to Mick, his search history is objective evidence corroborating that Mick did not intentionally show sexually explicit content to Joan, and that he would not have been sexually gratified by doing so.

¶51 We conclude that Mick is not entitled to a new trial based on the search history evidence. For purposes of this opinion, we assume without

---

[19] In total, Mick points to five search queries from that April date, asked in the following sequence: "what do i do if my daughter seen me masterbaiting?"; "my daughter seen me masterbaiting?"; "my daughter caught me masterbaiting?"; "what do i do if my daughter seen me masterbaiting?"; and "can i lock the data on my cell phone?"

deciding that Mick can satisfy the four *Plude* factors (although we note that this is no small assumption in Mick's favor). We conclude that the circuit court properly denied the motion because there is not a reasonable probability of a different result had Mick's search history been presented to the jury.[20]

¶52 Initially, we observe that the new evidence is contrary to the unequivocal testimony Mick gave at trial. As mentioned above, Mick testified that there was one incident in which he looked at pornography when Joan was in the same room, but Mick insisted that he thought Joan was sleeping. Trial counsel then asked Mick: "Have there been any other times that you have had adult images or anything of that nature on your phone or computer or anything else where [Joan] would have been in the room?" Mick responded: "Absolutely not. No." Indeed, had Mick's search history been available to the prosecutor during

---

[20] The applicable standard of review of the reasonable probability determination for newly discovered evidence has been characterized in different ways in the case law. Some cases state that the determination is a question of law we review de novo. *See, e.g.*, *State v. Plude*, 2008 WI 58, ¶33, 310 Wis. 2d 28, 750 N.W.2d 42. Other cases indicate that we review this determination for an erroneous exercise of discretion by the circuit court. *See State v. Avery*, 2013 WI 13, ¶32, 345 Wis. 2d 407, 826 N.W.2d 60 ("When weighing the new evidence against the evidence presented at trial, we cannot say that the circuit court erroneously exercised its discretion when it concluded that the photogrammetry evidence would not create a reasonable doubt in the minds of the jury." (emphasis omitted)); *State v. Edmunds*, 2008 WI App 33, ¶16, 308 Wis. 2d 374, 746 N.W.2d 590 (appearing to apply a discretionary standard of review to the circuit court's determination that "there was not a reasonable probability a new result would be reached with a new trial").

This apparent inconsistency in the case law is not limited to the cases we cite. Almost twenty-five years ago, in a concurrence in *State v. McCallum*, 208 Wis. 2d 463, 561 N.W.2d 707 (1997), then-Chief Justice Abrahamson wrote: "The cases reveal that although the supreme court repeats the erroneous exercise of discretion standard of review, it often appears to have reviewed the trial courts' decisions independently, determining anew whether there exists a reasonable probability of a different result." *See id.* at 485 n.5 (Abrahamson, C.J., concurring).

Here, the parties do not address the apparent inconsistency in the case law, and we have not undertaken an exhaustive review of the relevant cases. Rather, we will apply the de novo standard, which could only benefit Mick.

the trial, one imagines that he would have jumped at the opportunity to use this evidence to impeach Mick's unequivocal trial testimony.

¶53    Presumably, had Mick been aware of the objective evidence proving that the testimony he gave at trial was inaccurate, Mick's trial testimony would have been different.  Even so, we do not see the evidence of Mick's April 2015 search history and his explanation of what happened on that occasion as highly probative of Mick's mental state four months later.  Even assuming that Mick was embarrassed when Joan unexpectedly entered his bedroom and saw him masturbating in April 2015, that does not speak to his intentions in August 2015.  The newly discovered evidence would not have provided the jury with any reason to discount Joan's statements in her forensic interview, which the jury clearly believed.  We conclude that, had the search history evidence been presented to the jury, there is not a reasonable probability that it would have helped his case.

## CONCLUSION

¶54    For all these reasons, we conclude that Mick is not entitled to a new trial based on a theory of ineffective assistance of counsel or newly discovered evidence.

*By the Court.—*Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.